## Robeson, Appellant, *v.* Pels.

202    399
23 SC   56

*Contract—Offer—Acceptance—Time—Custom.*

In an action on a contract where the defendant living in Hamburg cables an offer to the plaintiff living in Philadelphia, and the cablegram is received in Philadelphia shortly after midday on a Saturday, and the plaintiff delays answering until Monday afternoon, and there is evidence of a custom both in Philadelphia and Hamburg that in dealings of the kind by cablegram answers must be sent within twenty-four hours, it is entirely correct for the court to charge that if the jury find " a certain, definite, uniform reasonable custom that that should be done, then that custom is binding."

In such a case it is also proper to charge that if the jury should not find the custom proved, they should then determine whether the answer was within a reasonable time under all the circumstances of the case, and that while a message by telegram in the nature of things calls for a speedier answer than one by letter, yet even in such transactions the recipient has a right to time to think and decide.

*Legal holidays—Saturday afternoon—Act of June 23, 1897, P. L. 188.*

The legal holidays created by the Act of June 23, 1897, P. L. 188, are permissive only, and the operative force of the act is limited to transactions regarding payment, protest, etc., of commercial paper. It does not apply to ordinary contracts.

*Appeals—Practice—Verdict against weight of evidence.*

An assignment of error to the effect that the verdict was against the weight of the evidence is one that the appellate court will only consider in exceptional cases. The remedy for a wrong verdict is in the court where it was rendered.

Argued Jan. 20, 1902. Appeal, No. 295, Jan. T., 1901, by plaintiff, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1899, No. 41, on verdict for defendant in case of Jacob S. Robeson v. Siegfried Pels. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Assumpsit on a contract alleged to have been made by cablegrams. Before Willson, P. J.

From the record it appeared that plaintiff was a metal broker doing business in Philadelphia. The defendant resided in Hamburg. The three telegrams on which the alleged contract was based were as follows:

1. Robeson to Pels, June 22, 1899:

" I can sell c. i. f. 300 tons ferro monthly shipment fifty next six months $66. Will you accept?"

2. Pels to Robeson, Saturday, June 24, 1899:

" Order accepted commencing September, October shipment. Telegraph confirmation."

3. Robeson to Pels, Monday, June 26, 1899:

" I will accept."

The court charged in part as follows:

This alleged contract was made, if it was made at all, through cablegrams. The plaintiff was in Philadelphia, and the defendant was in Hamburg, Germany. The beginning of whatever took place in regard to it, was a cablegram from the plaintiff to the defendant reading this way: " I can sell c. i. f. 300 ferro monthly shipment fifty next six months $66. Will you accept?" As interpreted and made somewhat fuller, as you have heard by the evidence, that was equivalent to this, that the plaintiff informed the defendant that he could sell, custom house duties and charges paid, insurance and freight paid, to this port, 300 tons of Ferro Manganese in monthly shipments of fifty tons during the next six months at $66. It also contained an inquiry whether the defendant would accept such a proposition. In reply to that the defendant wired to the plaintiff, " Order accepted commencing September, October shipments. Telegraph confirmation." That dispatch came to Philadelphia and two of the cipher words in it, which interpreted mean what I have read, were not clear to the plaintiff; there were slight differences in those words from the words which signified a portion of the message which I have read to you. The plaintiff asked to have the inaccuracies made clear. There has been some criticism of his conduct in that matter. Perhaps you will think that in view of the nature and magnitude of the contract that there is no real ground for criticism. It seems to me he had a right to know just what the words were, and, while it is possible he might have come to a conclusion by thought and examination as to what the words really were, still, I do not know that that was his duty. I should be inclined to think, if I were in your place, that so far as his conduct in asking a repetition of the message in order that it might be made perfectly clear is concerned, it was not open to fair criticism, but that is a matter I leave to you.

This cablegram of which I am speaking came to Philadelphia on Saturday morning, and the plaintiff found it at his office when he got there, shortly after eight o'clock. Finding the inaccuracies which have just been mentioned, he returned the message for correction, and left for Reading. He came back from Reading and got to his office a little after one o'clock, when he found that the message was made clear by proper corrections. Now comes the point at which you are to consider what may be a decisive question in the case. There was no contract up to this time. There had been an inquiry made by the plaintiff as to whether the defendant would accept the proposition on certain terms. The defendant had replied stating that he would accept the proposition somewhat modified, but, to complete the contract, it was necessary that the defendant should be informed whether or not the plaintiff would make the proposition so modified. The plaintiff received this information by wire shortly after one o'clock on Saturday. No answer was sent to the defendant until after three o'clock on Monday. It is true, as has been stated, the time which fixed the rights of the parties, whatever they were, was the time when that message was sent, notwithstanding it was not received until the next morning by the defendant. Was that message sent in a reasonable time? If it was not sent in time, then there was no contract between the parties. If it was sent in proper time so as to make it obligatory on the part of the defendant that he should furnish the Ferro Mangancse in the amounts stated and in the times specified, then there was a contract. I have been asked to say to you as matter of law that an answer to a telegram of that nature must be sent within twenty-four hours. I cannot say that to you. [If there was a custom, a certain, definite, uniform, reasonable custom that that should be done, then that custom was binding and the telegram was not sent within the twenty-four hours and would not be an effective telegram.] [1] You have heard the evidence on that point. It is for you to say whether or not you think there was such a custom as I have described which fixed the time. If there was such a custom and the telegram was not sent within that time, that would constitute a cause to end the plaintiff's claim. Aside from the question whether there as a custom or not, was the telegram sent within a reasonable time, because that would be the point in my mind

which you would have to settle, in case you think there was no custom which operated in the case.    What is a reasonable time depends on the circumstances of cases frequently.    It may in this case.    It depends on the nature of the transaction.    I suppose everybody understands, I should think the inference is an irresistible one, that a message sent by telegram, in the nature of things, calls for a speedier answer than a message sent by letter.    If a man in New York telegraphs to Philadelphia that he has something which he can sell at a certain price, and put in his telegram " Answer whether you want it," it seems to me that the necessary inference to be drawn from such an inquiry made in such a way is that he expected and ought to have a prompt reply.    I cannot say to you as matter of law what would be a prompt reply ; whether one hour, five hours, ten hours, twenty-four hours or forty-eight hours would be a prompt reply, but I do say that the reply ought to be prompt, as quick as under the circumstances of the case with reference to the nature of the transaction the reply could be sent.    Of course, you would say the man had a right to turn around, had a right to think and decide what would be the proper thing to do under the circumstances, but allowing all that, it would seem to me that the jury ought to say in regard to such an exchange of inquiries and replies by wire that the parties who claim that they have rights fixed by such messages should be held to prompt, quick, action in the matter.    If you think that this plaintiff did not make such a prompt reply as was reasonable under the circumstances, then he cannot claim that there was any contract, and he cannot claim, of course, that there was a breach of any contract by the defendant.    [I do not think that the circumstance that Saturday afternoon was a half holiday has anything to do with the question one way or the other.]  [2]  [The plaintiff got this telegram shortly after one o'clock, and he had the rest of that day and that evening to make a reply, and, I think, it is a very fair question whether dealing as they were, with reference to an article which was shifting in price and at that time was rising in price, the plaintiff ought not to have made his reply during that day, aside from any question as to whether ordinarily twenty-four hours or forty-eight hours might be allowed for sending such a message.]  [3]    The whole question is for you, however.

Verdict and judgment for defendant.    Plaintiff appealed.

*Errors assigned* were (1–3) above instructions quoting them; (4) that the verdict was against the weight of the evidence.

*Thomas James Meagher*, with him *Robert S. Bright*, for appellant.—The law of Pennsylvania determines the validity of the acceptance: Cowan v. O'Connor, L. R. 20 Q. B. D. 640; Perry v. Mount Hope Iron Co., 15 R. I. 380.

A legal holiday is one on which there is exemption from business without legal detriment therefrom : Mitchell v. Bates, 35 S. E. Repr. 420; Handy v. Maddox, 37 Atl. Repr. 222; Richardson v. Goddard, 23 How. 28.

Saturday afternoon is a legal half holiday on which there may be a discontinuance of business without legal injury : Reynolds v. Palen, 20 Abb. N. C. 11; Fries v. Coar, 19 Abb. N. C. 267; Rice v. Gable, 1 Pa. C. C. Reps. 567.

The plaintiff's acceptance was within a reasonable time: Ortman v. Weaver, 11 Fed. Repr. 358; Moxley v. Moxley, 2 Metc. (Ky.) 309; Edmundson v. Wragg, 104 Pa. 500.

*J. Warren Coulston*, for appellee, was not heard, but in his printed brief said: As to the duty of sending a reply to a telegram when the market is fluctuating, as in our case, the rule is clearly stated in the case of Minnesota Linseed Oil Co. v. Collier White Lead Co., 4 Dillon C. C. R. 431.

In the case of Cook v. Forker, 193 Pa. 461, it is decided that contracts made on Sunday are not void in the sense that they do not admit of ratification, though so long as they are executory the law will refuse to enforce them, and acts of ratification will make them new contracts which the parties will be bound to perform.

OPINION BY MR. JUSTICE MITCHELL, May 5, 1902:

The question in the case is, whether or not there was a contract between the parties, and that depends on whether a qualified acceptance by defendant of plaintiff's offer to sell was accepted by plaintiff and defendant notified in time.    That was a question of fact and as such was properly left to the jury.

Defendant's cabled message was received by plaintiff about eight o'clock on Saturday morning and after correction of two misspelled words in the cipher, was again received about noon. The message requested acceptance by telegram, but no answer was sent by plaintiff until Monday, about three P. M. Defendant contended that this was too late, and in support of his refusal to accept, gave evidence of a custom both in Philadelphia and in Hamburg, where he resides, that in dealings of the kind by cablegram, answers must be sent within twenty-four hours. The judge charged that if the jury found "a certain, definite, uniform, reasonable custom that that should be done, then that custom was binding." This was entirely correct.

He further charged that if the jury should not find the custom proved, they should then determine whether the answer was within a reasonable time under all the circumstances of the case, directing their attention to the fact that while a message by telegram in the nature of things calls for a speedier answer than one by letter, yet even in such transactions the recipient has a right to time to think and to decide.

On this branch of the case the jury had before them evidence that the telegraph office was open all of Saturday afternoon and evening, and on Sunday, and that business in Hamburg was done on Sunday. On the other hand plaintiff claimed that Saturday in Pennsylvania was a half holiday and therefore he had all of Monday to answer. On this point the judge charged: "If you think that this plaintiff did not make such a prompt reply as was reasonable under the circumstances, then he cannot claim that there was any contract, and he cannot claim, of course, that there was a breach of any contract by the defendant. I do not think that the circumstance that Saturday afternoon was a half holiday has anything to do with the question, one way or the other. The plaintiff got this telegram shortly after one o'clock, and he had the rest of that day and that evening to make a reply, and I think it is a very fair question whether, dealing as they were with reference to an article which was shifting in price and at that time was rising in price, the plaintiff ought not to have made his reply during that day, aside from any question as to whether ordinarily twenty-four hours or forty-eight hours might be allowed for

sending such a message. The whole question is for you, however."

This part of the charge is particularly assigned for error, as contrary to the Act of June 23, 1897, P. L. 188, regulating holidays. But the act is by no means so broad as claimed. The holidays created by it are permissive only, and its operative force is limited to transactions regarding payment, protest, etc., of commercial paper. The enacting words are, that certain days "shall, for all purposes whatever as regards the presenting for payment or acceptance, and as regards the protesting and giving notice of the dishonor of bills of exchange, checks, drafts and promissory notes, made after the passage of this act, be treated and considered as the first day of the week, commonly called Sunday, and as public holidays and half holidays," etc. Expressio unius exclusio est alterius. It is true that in the same section it is also, "provided, further, that in construing this section, every Saturday designated a half holiday shall until twelve o'clock noon be deemed a secular or business day; and the days and half days aforesaid, so designated as holidays and half holidays shall be considered as public holidays and half holidays for all purposes whatsoever as regards the transaction of business." But this is manifestly a reiteration from superabundant caution, of the intent to limit the holiday portion of Saturday to the afternoon, for it is immediately followed by a further proviso that nothing in the act shall be construed to prevent or invalidate any legal process "on any of the holidays or half holidays herein designated as holidays, nor to prevent any bank from keeping its doors open or transacting its business on any of the said Saturday afternoons if, by a vote of its directors, it shall elect to do so." This last clause is fully indicative of the purpose of the whole act, to relieve banks and others from the strict requirements of commercial law, as to demand payment, etc., of negotiable paper, if they choose to avail themselves of the permission, but not to make it obligatory on them to do so, at least as to Saturday afternoons.

The two points on which the existence of a contract turned, were first, whether there was a custom binding on plaintiff to answer in twenty-four hours, and secondly, if there was no such custom proved, then whether on general business princi-

ples under all the circumstances of the case, he had answered within a reasonable time. Both were questions of fact, and both were properly submitted to the jury.

The fourth assignment of error that the verdict was against the weight of the evidence is one that we have repeatedly said we only consider in exceptional cases. The remedy for a wrong verdict is in the court where it was rendered.

Judgment affirmed.